UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Ryan Brink,

    Petitioner,

    v.                                      Civil Action No. 2:13-cv-319

State of Vermont; Andrew Pallito,
Commissioner, Vermont Department
of Corrections,

    Respondents.

## REPORT AND RECOMMENDATION
(Docs. 1, 2, 6, 10)

      Petitioner Ryan Brink, proceeding *pro se*, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his 2006 convictions for sexual assault in violation of 13 V.S.A. § 3252(c), and for enabling consumption of alcohol by a minor in violation of 7 V.S.A. § 658(a)(2).  (Doc. 1.)  Brink's claims include police and prosecutorial misconduct, errors in the admission of evidence, ineffective assistance of counsel, and judicial misconduct.  He also alleges that the State did not meet its burden of proof, and that he is actually innocent of the crimes for which he was convicted.

      Respondents move to dismiss the Petition, arguing that Brink's claims either do not warrant habeas relief, or are procedurally barred.  (Doc. 10.)  Also pending before the Court are Brink's Motion to Appoint Counsel (Doc. 2), and Brink's Motion for Summary Judgment (Doc. 6).  For the reasons set forth below, I recommend that Respondents'

Motion to Dismiss be GRANTED, Brink's Petition for a Writ of Habeas Corpus be DENIED, and that this case be DISMISSED. I further recommend that Brink's Motion to Appoint Counsel and Motion for Summary Judgment be DENIED AS MOOT.

### Factual and Procedural Background

**I.   State Criminal Trial**

In March 2006, Brink's adult step-daughter, Dixie Lambert, reported to the Vermont Department for Children and Families ("DCF") that Brink had sexually assaulted her younger sister (Brink's step-daughter), J.L. Lambert reported that the incident occurred in 2004, when J.L. was 14 years old and living with her mother, her two younger brothers, and Brink. J.L. told investigators that she and Brink were home alone together when he drove them to a nearby store to purchase liquor. When they returned to the home, J.L. drank some of the alcohol and became intoxicated. J.L. fell asleep and awoke to discover Brink engaging in sexual intercourse with her.

At trial, Brink relied on an alibi defense, asserting that he was incarcerated at the time of the offense. J.L. initially told investigators that the incident occurred in the "summer" of 2004. Investigators determined that Brink was incarcerated from May 15, 2004 until the following year. When investigators revealed that inconsistency to J.L. during subsequent interviews, she responded that the incident occurred shortly before Brink's incarceration began. Brink highlighted the "summer" inconsistency for the jury at trial. (*E.g.*, Doc. 10-1 at 61.)[1]

---

[1] I have reviewed the trial transcript (Doc. 10-1) in its entirety, and quote portions of that transcript as necessary below.

Attorney Michael P. Ledden was appointed to represent Brink in the state trial court proceeding. J.L. was sixteen years old at the time of trial, provided in-court testimony, and was available for cross-examination. On direct examination, when asked to describe which part of Brink's body touched her body, she did not respond aloud. Over Brink's objection, the trial court recommended that J.L. write her response on a piece of paper first. When J.L. could not read her response to the jury, the court allowed the state's attorney to read the paper, asking, "Ryan's penis was in my vulva, is that what you wrote, yes or no?" (Doc. 10-1 at 81.) J.L. affirmed. The trial court also admitted testimony from J.L.'s boyfriend, who repeated statements J.L. made describing the incident with Brink. Attorney Ledden filed a pretrial motion to exclude J.L.'s statements to her boyfriend as hearsay. The trial court did not definitively rule on the motion on the morning of trial, and ultimately, Attorney Ledden did not object to the boyfriend's testimony, choosing instead to compare his testimony to other statements made by J.L.

On cross-examination, Attorney Ledden drew out several inconsistencies in J.L.'s testimony, as compared with statements made to investigators and during her deposition. Attorney Ledden also elicited testimony from several witnesses to suggest that J.L. was motivated to fabricate the allegations against Brink in order to have him removed from her mother's household. J.L. testified that she was living with her father in 2006, where she did not want to live, and that she also did not like living with Brink in her mother's household because of how he treated her mother and brothers. The jury heard testimony to suggest that after Dixie Lambert made the report resulting in Brink's arrest, J.L. immediately returned to the household to live with her mother.

On May 24, 2006, the jury convicted Brink of sexual assault in violation of 13 V.S.A. § 3252(c) and enabling consumption of alcohol by a minor in violation of 7 V.S.A. § 658(a)(2). Attorney Ledden filed a motion for judgment of acquittal and a motion for a new trial challenging several evidentiary rulings and arguing that the State did not admit sufficient evidence to prove guilt beyond a reasonable doubt. The trial court denied Brink's motions, and on November 8, 2006, Brink was sentenced to an aggregate sentence of 18 to 25 years to serve.

## II. Direct Appeal

The Vermont Supreme Court affirmed Brink's conviction on March 14, 2008. *State v. Brink*, 2008 VT 33, 949 A.2d 1069 (mem.). The court rejected two of the three arguments that Brink raised on appeal: (1) that permitting J.L. to provide a written accusation instead of oral testimony at trial violated the Confrontation Clause; and (2) that the State's evidence was insufficient to establish guilt beyond a reasonable doubt. *Id*. at ¶ 5, 949 A.2d at 1071. The court did not consider the third issue—whether the trial court erred when it admitted the testimony of J.L.'s boyfriend in which he described J.L.'s statements about the incident—because the court concluded that Brink did not preserve the issue at trial. *Id*. at ¶ 6, 949 A.2d at 1072.

## III. Petition for Post-Conviction Relief

On May 2, 2008, Brink filed a *pro se* petition for post-conviction relief ("PCR") in Vermont state court under 13 V.S.A. §§ 7131–7137. (Doc. 7-7 at 48–57.) He filed an amended PCR petition on September 10, 2009. (*Id.* at 58–64.) The amended PCR petition appears to include the same three claims of error that Brink pursued on direct

appeal: evidentiary error in admitting the testimony of J.L.'s boyfriend, a Confrontation Clause claim, and insufficiency of the evidence.  (*See id.* at 63.)  The amended PCR petition also asserted various other claims of error, including: (1) prosecutorial misconduct (e.g., withholding a police interview of J.L. allegedly showing that the offense occurred while Brink was incarcerated); (2) ineffective assistance of counsel; (3) police misconduct; (4) defective indictment; (5) newly discovered evidence; (6) judicial bias; and (7) excessive sentence.  (*See id.* at 62–63.)  The Respondents have filed transcripts of the state court PCR proceedings.  (Doc. 15.)

On November 21, 2011, the PCR court denied Brink's amended PCR petition, concluding that Brink failed to demonstrate that the prosecution withheld exculpatory evidence or that he received ineffective assistance of counsel, and that Brink was not entitled to relief on his sufficiency-of-the-evidence claim.  (Doc. 7-7 at 39–42.)  The PCR court disposed of all of Brink's remaining claims in a single sentence: "With regard to petitioner's other claims such as prosecutorial misconduct the court finds that petitioner has failed to introduce any competent evidence to support those claims."  (*Id.* at 42.)  After an appeal and remand from the Vermont Supreme Court to address a question about the Defender General's merit-review process, *In re Ryan Brink*, No. 2012-029, 2012 WL 6827297, at *1 (Vt. Nov. 1, 2012) (unpublished mem.), the PCR court entered an amended final judgment dismissing Brink's petition for the reasons that the PCR court had previously articulated.  (*See* Doc. 7-7 at 37.)

Brink appealed and the Vermont Supreme Court affirmed.  *In re Ryan Brink*, No. 2013-034, 2013 WL 9055932, at *1 (Vt. Nov. 20, 2013) (unpublished mem.).  The court

rejected Brink's claim that the prosecution had withheld exculpatory evidence, and also rejected his ineffective-assistance-of-counsel claim. *Id*. at 2. The court declined to review whether the evidence at trial was sufficient to support the conviction, because it had already considered the issue as part of Brink's original 2008 appeal from his conviction. *Id*. The Vermont Supreme Court's opinion does not discuss any other issues.

### IV. Federal Habeas Corpus Petition Under § 2254

On December 31, 2013, Brink filed the instant habeas petition pursuant to 28 U.S.C. § 2254. (Doc. 1.) Brink's habeas petition can fairly be said to repeat all of the claims that he asserted in the PCR case.

## **Discussion**

### I. Respondents' Motion to Dismiss

As noted above, Respondents argue that Brink is not entitled to habeas relief with respect to his exhausted claims, and his remaining unexhausted claims are procedurally defaulted. (Doc. 10 at 4, 9–14.) With respect to Brink's claim regarding the testimony of J.L.'s boyfriend, Respondents cite the Vermont Supreme Court holding that Brink failed to preserve this evidentiary objection at trial. (*Id.* at 6.) As to all of the other unappealed claims, Respondents contend that Brink could have brought any of these claims on direct appeal or on appeal from the PCR matter, but he failed to do so, and thus those claims are procedurally barred. (*Id*.)

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a federal court may not grant the habeas petition of a state prisoner 'unless it appears that the applicant has exhausted the remedies available in the courts of the State; or that there

6

is either an absence of available State corrective process; or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.'" *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)). In order to exhaust his state-court remedies, "a petitioner must present the substance of the same federal constitutional claims that he now urges upon the federal court to the highest court in the pertinent state." *Id.* at 89–90 (internal quotation marks and citations omitted); *see also Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (to satisfy exhaustion requirement, petitioner "must first have presented his claim to the highest court of the state"). A petitioner need not first seek state habeas review before submitting a petition under § 2254, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999), although complete state-level review of his federal claims, either on direct appeal or collateral review, is a prerequisite. *See Morgan*, 204 F.3d at 369. The exhaustion requirement is based upon "interests of comity and federalism [which] dictate that state courts must have the first opportunity to decide a petitioner's claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005).

When a habeas claim contains a mix of exhausted and unexhausted claims, the district court must discern the proper disposition. In the case of such "mixed petitions," courts generally select one of the following three options: (1) dismiss the entire petition without prejudice; (2) allow the petitioner to dismiss his unexhausted claims without prejudice, and proceed with the exhausted claims; or (3) stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his claims. *See Zarvela v. Artuz*, 254 F.3d 374, 382 (2d Cir. 2001).

Here, Brink has utilized Vermont's corrective process (either on direct appeal or collateral review) to exhaust five of his claims. On direct appeal, he presented his Confrontation Clause claim, sufficiency-of-the-evidence claim, and his challenge to the admission of J.L.'s boyfriend's testimony. In his PCR appeal, he also presented his ineffective-assistance claim and his claim regarding the State's alleged failure to disclose potentially exculpatory evidence. The Vermont Supreme Court has had a full opportunity to review each of those claims, and they are exhausted.

The remainder of Brink's claims were rejected summarily by the PCR court in its November 21, 2011 Order. (*See* Doc. 7-7 at 39 (nonexhaustive list of Brink's grounds for relief); *id.* at 42 ("With regard to petitioners' other claims such as prosecutorial misconduct the court finds that petitioner has failed to introduce any competent evidence to support those claims.").) Brink did not appeal the PCR court's ruling on those remaining claims. Since Brink did not present those claims to the Vermont Supreme Court, they are not "exhausted" in the sense of having been presented to the highest Vermont court.

I conclude, however, that those remaining claims should be deemed exhausted because there are no remaining procedures available in Vermont state court for Brink to exhaust them. *See* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."); *Aparicio*, 269 F.3d at 90 ("[A] federal court may theoretically find that there is an 'absence of available State corrective process' under

§ 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile. In such a case the habeas court theoretically has the power to deem the claim exhausted."). Vermont courts hearing PCR petitions are "not required to entertain a second or successive motion for similar relief on behalf of the same prisoner." 13 V.S.A. § 7134. As the Vermont Supreme Court has explained, § 7134 "bars relitigation of claims actually raised and decided on the merits in an earlier PCR." *In re Laws*, 2007 VT 54, ¶ 11, 928 A.2d 1210, 1215. Here, all of the remaining claims were adjudicated by the PCR court in its November 21, 2011 Order, and that court's adverse ruling on each of those claims was not appealed. The PCR court's decision on those claims was—although summary—on the merits; and since the claims were not appealed, the PCR court's ruling on the claims is final. Section 7134 bars their relitigation in Vermont state court.[2]

Since all of Brink's claims are exhausted (or deemed exhausted), it is unnecessary to conduct the disposition analysis for mixed petitions in this case. Rather, I proceed to analyze Brink's claims. I begin with the collection of claims that the PCR court rejected summarily (e.g., police misconduct, defective indictment, newly discovered evidence, judicial bias, excessive sentence) (the "unappealed" claims).

### A. The Unappealed Claims

The good news for Brink regarding the unappealed claims is that, as discussed above, they are deemed exhausted, and thus 28 U.S.C. § 2254(b) is not a barrier to

---

[2] Furthermore, I can discern no basis for returning to the PCR court and seeking relief from judgment under V.R.C.P. 60(b).

federal habeas review. Unfortunately for Brink, all of those claims are procedurally defaulted.

As the Second Circuit has explained, "a claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (emphasis omitted)). Here, Brink failed to "exhaust" (present to the Vermont Supreme Court) the claims at issue. Moreover, as described above, 13 V.S.A. § 7134 procedurally bars the relitigation of those claims in Vermont state court.

Since the unappealed claims are procedurally defaulted, federal habeas review of those claims is barred unless Brink can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A petitioner can demonstrate cause either by showing that "some objective factor, external to [his] defense, interfered with his ability to comply with the state's procedural rule" or by showing futility in the sense that "prior state case law has consistently rejected a particular constitutional claim." *Gutierrez v. Smith*, 702 F.3d 103, 111–12 (2d Cir. 2012) (internal quotation marks omitted). Here, Brink has offered no explanation for his failure to challenge on appeal the PCR court's determination of the unappealed claims. Neither does he assert that doing so would have been futile due to repeated prior rejections of those claims.

Brink has also not shown that failure to consider the unappealed claims would result in a fundamental miscarriage of justice, "i.e., that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). "To satisfy the *Schlup* standard, a claim of actual innocence must be both 'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 521 (2006)). "For the claim to be 'credible,' it must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup*, 513 U.S. at 324). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Id.* (quoting *House*, 547 U.S. at 538).

Here, Brink states that he "gave evidence that he could not have committed the offenses as alleged as his alibi so shows." (Doc. 1-1 at 14.) But Brink has not offered any new evidence to support his alibi defense. As the Vermont Supreme Court noted, Brink raised and argued the "summer"/alibi issue at trial. *In re Brink*, 2013 WL 9055932 at *2. Brink's second argument for actual innocence is that, on June 19, 2006—after his trial—DCF determined that an allegation of physical abuse that J.L. had made against her

11

biological father was "unsubstantiated." (*See* Doc. 1-1 at 13; Doc. 1 at 4, ¶ 22.)[3] While that issue might relate to J.L.'s credibility, it is not "compelling." The prosecution's evidence against Brink might have been "fraught with inconsistencies," *Brink*, 2008 VT 33, ¶ 10, 949 A.2d at 1073, but I cannot conclude that it is more likely than not that this one additional piece of information would have caused any reasonable juror to have reasonable doubt. This is not the kind of "extraordinary case" that would satisfy *Schlup*'s "demanding" standard. *Rivas*, 687 F.3d at 542 (quoting *House*, 547 U.S. at 538).

For the above reasons, I conclude that all of Brink's unappealed claims are procedurally defaulted, and that none of the potential gateways (cause and prejudice or miscarriage of justice) are available to permit their consideration in these proceedings. I turn next to those claims that Brink did present to the Vermont Supreme Court.

### B.     Claims Previously Analyzed by the Vermont Supreme Court

Under AEDPA's deferential standard of review, Brink may be granted relief with respect to any of the five claims previously considered by the Vermont Supreme Court only if that court's decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). This standard of review is "highly deferential to the state courts" and demands that "state-

---

[3] It is unclear whether Brink is also asserting that DCF reached the same conclusion regarding any allegations of physical assault perpetrated by Brink himself against J.L. or any of her siblings. There was some testimony at trial suggesting that Brink had physically assaulted J.L. and her sister. (*See* Doc. 10-1 at 141–42.) My conclusion remains the same in any case.

12

court decisions be given the benefit of the doubt." *Cardoza v. Rock*, 731 F.3d 169, 177 (2d Cir. 2013) (internal quotation marks omitted).

### 1.     Admission of J.L.'s Boyfriend's Testimony

Brink has procedurally defaulted on the hearsay claim regarding the testimony of J.L.'s boyfriend. The Vermont Supreme Court explicitly declined to decide that issue because it was not properly preserved for appeal. *Brink*, 2008 VT 33, ¶ 6, 949 A.2d at 604–05. Therefore, before even reaching the deferential AEDPA standard, the Court should conclude that Brink's claim on this issue is procedurally barred. That claim shares the same fate as Brink's other procedurally defaulted claims.

### 2.     Ineffective-Assistance-of-Counsel Claim

As noted above, the Vermont Supreme Court addressed Brink's ineffective-assistance-of-counsel claim in the PCR appeal. The trial court had concluded that defense counsel "raised appropriate objections, and extensively cross[-]examined the state's witnesses" and that counsel's performance "exceeded the standards of professional competence." (Doc. 7-7 at 41.) According to the PCR court, "[t]he alleged failures of counsel, if any, were in the nature of valid tactical decisions." (*Id.*) The Vermont Supreme Court concluded that the record supported those determinations and affirmed. *In re Brink*, 2013 WL 9055932 at *2.

Although the Vermont Supreme Court's opinion in the PCR appeal did not explicitly discuss the ineffective-assistance-of-counsel standard or cite *Strickland v. Washington*, 466 U.S. 668 (1984), the appropriate standard was explicitly articulated by the PCR court (*see* Doc. 7-7 at 40–41), and was necessarily implicitly applied by the

13

Vermont Supreme Court.[4] Based on my review of the record, I conclude that the Vermont Supreme Court's application of the ineffective-assistance-of-counsel standard was not contrary to, or an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts.

### 3. Admission of J.L.'s Written Accusation

On direct appeal, Brink challenged, as a Confrontation Clause violation, the procedure whereby J.L. was permitted to write down her accusation rather than give oral testimony. The Vermont Supreme Court rejected Brink's Confrontation Clause challenge, likening the process used to the procedure upheld in *Maryland v. Craig*, 497 U.S. 836 (1990), and concluding that "the trial court acted within its discretion when it permitted the State to read J.L.'s testimony to the jury." *Brink*, 2003 VT 33, ¶ 9, 949 A.2d at 1073. I conclude that the Vermont Supreme Court's holding on this issue was entirely reasonable on both the law and the facts. As in *Craig*, the procedure employed was "a far cry from the undisputed prohibition in the Confrontation Clause: trial by *ex parte* affidavit or inquisition." 497 U.S. at 851. Permitting J.L. to write down her accusation allowed testimony regarding an essential element of the case, while retaining all of the essential "elements of effective confrontation." *Id.* As the Vermont Supreme Court noted, the defense was able to face J.L. and to cross-examine her, and had "a full opportunity to explore J.L.'s reluctance to provide an oral accusation on cross-examination." *Brink*, 2003 VT 33, ¶ 8, 949 A.2d at 1072.

---

[4] Moreover, the case cited by the Vermont Supreme Court in the PCR appeal—*In re Quinn*, 174 Vt. 562, 816 A.2d 425 (2002) (mem.)—includes citations to other Vermont cases explicitly applying the *Strickland* standard, such as *State v. Bristol*, 159 Vt. 334, 618 A.2d 1290 (1992).

### 4.    Prosecutorial-Misconduct Claim

In his PCR appeal, Brink argued that the prosecution failed to disclose a police interview of J.L. that allegedly proved Brink's alibi defense; i.e., that the offense occurred while Brink was incarcerated. The PCR court found the claim unsupported by the evidence (Doc. 7-7 at 40), and the Vermont Supreme Court affirmed.

There is no question that "[u]nder *Brady* [*v. Maryland*, 373 U.S. 83 (1963)] and its progeny, the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is material either to guilt or to punishment." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 91 (2014) (internal quotation marks omitted). Here, however, there is no evidence of any failure to disclose. As the Vermont Supreme Court explained:

> Defense counsel referred accurately to the interviews [of J.L.] of March 26 and April 3, 2006 in cross-examining the complainant, questioned her closely about her initial recollection that the offense had occurred during the 'summer,' and argued that, if her initial recollection was accurate, [Brink] could not have committed the offense.

*In re Brink*, 2013 WL 9055932, at *2. My review of the record is in accord; if there are any interviews of J.L. that the defense was not aware of at trial, Brink has not pointed them out. Indeed, defense counsel mentioned at trial that there were three interviews of J.L. (Doc. 10-1 at 61.)

### 5.    Sufficiency-of-the-Evidence Claim

Brink asserted his sufficiency-of-the-evidence claim in both his direct appeal and his PCR appeal. The Vermont Supreme Court rejected the claim both times. *See Brink*, 2008 VT 33, ¶ 10, 949 A.2d at 1073 (concluding that "[t]he State's evidence, while

fraught with inconsistencies, was sufficient on the elements of the crimes for a reasonable trier of fact" to convict); *see also In re Brink*, 2013 WL 9055932, at *2 ("Petitioner's additional claim that the evidence was insufficient to support the judgment was raised and rejected on appeal, and may not be renewed here.").

For this claim, the appropriate inquiry is whether, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Gutierrez v. Smith*, 702 F.3d 103, 113 (2d Cir. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Here, as the Vermont Supreme Court noted, the State's case suffered from a number of infirmities. However, a rational juror could have credited J.L.'s testimony regarding the essential elements of the crimes charged. It is not this Court's role to retry the case, *id.*; the evidence in the light most favorable to the prosecution was sufficient for a rational juror to convict.

## II. Brink's Motion for Summary Judgment and Motion to Appoint Counsel

Brink has moved for summary judgment (Doc. 6) and for the appointment of counsel (Doc. 2). Because I recommend dismissal of this matter, I recommend that Brink's Motion for Summary Judgment (Doc. 6) and Motion to Appoint Counsel (Doc. 2) be DENIED AS MOOT.

## Conclusion

For the foregoing reasons, I recommend that Respondents' Motion to Dismiss (Doc. 10) be GRANTED, Brink's Petition for a Writ of Habeas Corpus (Doc. 1) be DENIED, and that this case be DISMISSED. I further recommend that Brink's Motion

to Appoint Counsel (Doc. 2) and Motion for Summary Judgment (Doc. 6) be DENIED AS MOOT.

Dated at Burlington, in the District of Vermont, this 12th day of August, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).